J-S62026-17 & J-S62027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: B.L.I., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.L. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 811 MDA 2017 |

Appeal from the Order Entered April 19, 2017
In the Court of Common Pleas of Fulton County Civil Division at No(s):
2017-00005

| | | |
|---|---|---|
| IN RE: ADOPTION OF: B.M.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.L. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 812 MDA 2017 |

Appeal from the Order Entered April 19, 2017
In the Court of Common Pleas of Fulton County Civil Division at No(s):
04 of 2017-OC

| | | |
|---|---|---|
| IN THE INTEREST OF: B.M.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 633 MDA 2017 |

Appeal from the Order Entered March 16, 2017
In the Court of Common Pleas of Fulton County Juvenile Division at
No(s):  CP-29-DP-0000004-2011

| | | |
|---|---|---|
| IN THE INTEREST OF: B.L.I., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.L., MOTHER | : : : : : | |
| | : | No. 634 MDA 2017 |

Appeal from the Order Entered March 16, 2017
In the Court of Common Pleas of Fulton County Juvenile Division at
No(s): CP-29-DP-0000005-2011

BEFORE: STABILE, MOULTON, and STRASSBURGER[*], JJ.

MEMORANDUM BY MOULTON, J.: **FILED NOVEMBER 14, 2017**

E.L. ("Mother") appeals from the April 19, 2017 decrees and the March 16, 2017 orders entered in the Court of Common Pleas of the 39th Judicial District (Fulton County Branch). The April 19, 2017 decrees terminated Mother's parental rights to her children, B.M.D. ("Son") and B.L.I. ("Daughter") (collectively "Children"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b).[1] The March 16, 2017 orders changed Children's permanency goal to adoption pursuant to 42 Pa.C.S. §

_____

\* Retired Senior Judge assigned to the Superior Court.

[1] Son was born in April 2004 and Daughter was born in November 2008.

- 2 -

6351.[2]  We affirm.[3]

The relevant factual and procedural history of this case is as follows.  In January 2016, Fulton County Services for Children ("Agency") received a report alleging that Mother had given birth to a drug-exposed child and that Children were living in a tent.  N.T., 3/16/17, at 34-35; Petitioner's Exh. F. Children were placed with, and continue to reside with, Foster Parents, who had been a placement resource when Children were previously adjudicated dependent.[4]

In November 2016, Mother was sentenced to 6 to 60 months' imprisonment and was incarcerated at State Correctional Institution Muncy. N.T., 3/16/17, at 8.  Following her incarceration, no visits occurred between Mother and Children.  *Id.* at 15, 17-18.  Mother sent Children three letters each, the first of which was received on Christmas Eve.  *Id.* at 10.  No other contact occurred between Mother and Children.  *Id.* at 15.

_____

[2] On May 4, 2017, this Court *sua sponte* consolidated Mother's appeals challenging the orders changing Children's permanency goal to adoption.  On July 6, 2017, this Court *sua sponte* consolidated Mother's appeals challenging the involuntary termination of her parental rights.  We will address the appeals in the same memorandum decision for ease of disposition.

[3] The orphans' court also terminated the parental rights of Son's father, M.D., and Daughter's father, D.I.  No father has filed an appeal, nor is any such individual a party to the present appeal.

[4] Children were previously adjudicated dependent on November 23, 2011, after Mother's arrest for driving under the influence with Children in the car, and on July 18, 2013, due to Mother's criminal charges and lack of stable housing.  N.T., 3/16/17, at 32-34.

On February 9, 2017, the Agency filed a petition to terminate Mother's parental rights to Children and to change Children's permanency goal to adoption. On March 16, 2017, the orphans' court held a hearing on the petition. At the conclusion of the hearing, the orphans' court orally delivered its decree involuntarily terminating Mother's parental rights and changing Children's permanency goal to adoption. N.T., 3/16/17, at 94-98. The orphans' court entered its order changing Children's permanency goal to adoption on that same date. Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal, challenging the orphans' court's orders changing Children's permanency goal to adoption. On April 18, 2017, the orphans' court entered its decrees involuntarily terminating Mother's parental rights. On May 8, 2017, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal, challenging the orphans' court's decrees terminating her parental rights.

On appeal, Mother raises the following issues:

> [1.] The trial court abused its discretion in changing the permanency goal to adoption where services have been provided for only 13 months toward achieving the goal of return to Mother, Mother was incarcerated at the time of the hearing, but testified that she would soon be released and the circumstances that existed that resulted in placement could only be alleviated upon Mother's release from incarceration.

Mother's Br., 633 MDA 2017 and 634 MDA 2017, at 4 ("Goal Change Br.").

> [2.] The trial court abused its discretion in terminating the parental rights of E.L. ("Mother") where services had been provided for only 13 months toward achieving the

goal of returning children to Mother, Mother was incarcerated at the time of the hearing, but testified that she would soon be released from incarceration, and only then would she have the opportunity to remedy the conditions that led to placement of the children and to fulfill the requirements set by the Agency for reunification.

Mother's Br., 811 MDA 2017 and 812 MDA 2017, at 4 ("Termination Br.").

We first address Mother's claim regarding the termination of her parental rights.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotation marks omitted).

"In termination cases, the burden is upon [the petitioner] to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction,

without hesitance, of the truth of the precise facts in issue.'" *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa.Super. 2003)).

Termination of parental rights is governed by statute. *See* 23 Pa.C.S. § 2511. The orphans' court terminated Mother's parental rights pursuant to sections 2511(a)(1), (2), (5), (8) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
> >
> > . . .
> >
> > (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . .

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

This Court need only agree with the orphans' court's decision as to any one subsection of section 2511(a), as well as section 2511(b), to affirm the termination. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Accordingly, we will examine the facts of this case under section 2511(a)(2).[5]

---

[5] Mother does not challenge the termination of her parental rights pursuant to section 2511(b) in the argument section of her brief; nor did she include any such challenge in her concise statement or statement of questions involved. Thus, we conclude that Mother has waived any challenge as to section 2511(b). *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa.Super. 2017)

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence that the following three conditions are met: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003); 23 Pa.C.S. § 2511(a)(2).  The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; "[t]o the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002).

Mother has been incarcerated repeatedly throughout Children's lives. Our Supreme Court addressed the relevance of incarceration in termination decisions under section 2511(a)(2) as follows:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

_____

(holding that the appellant waived her challenge to section 2511(b) by failing to include it in her concise statement and statement of questions involved).

- 8 -

***In re Adoption of S.P.***, 47 A.3d 817, 828 (Pa. 2012). Our Supreme Court

further stated:

> [W]e now definitively hold that incarceration, while not a
> litmus test for termination, can be determinative of the
> question of whether a parent is incapable of providing
> "essential parental care, control or subsistence" and the
> length of the remaining confinement can be considered as
> highly relevant to whether "the conditions and causes of the
> incapacity, abuse, neglect or refusal cannot or will not be
> remedied by the parent," sufficient to provide grounds for
> termination pursuant to 23 Pa.C.S. § 2511(a)(2). ***See e.g.***
> ***Adoption of J.J.***, 515 A.2d [883,] 891 [(Pa. 1986)] ("[A]
> parent who is incapable of performing parental duties is just
> as parentally unfit as one who refuses to perform the
> duties."); [***In re:***] ***E.A.P.***, 944 A.2d [79,] 85 [(Pa.Super.
> 2008)] (holding termination under § 2511(a)(2) supported
> by mother's repeated incarcerations and failure to be
> present for child, which caused child to be without essential
> care and subsistence for most of her life and which cannot
> be remedied despite mother's compliance with various
> prison programs).

***Id.*** at 830.

Mother contends that because she expected to be released from

incarceration in April 2017, one month after the termination hearing,

"insufficient time was afforded Mother to successfully complete her required

objectives for reunification." Termination Br. at 11.

The orphans' court found that Mother's repeated incarcerations have

impaired her ability to parent Children, stating:

> Mother has repeatedly proved incapable of adequately
> parenting her children. Namely, Mother has had consistent
> substance abuse problems, has been unable to prov[id]e the
> children with adequate housing, and has remained
> unemployed. Most recently, Mother is currently serving a

sentence of six (6) to sixty (60) months imprisonment, with no evidence offered as to a likely release date.

Perhaps most telling, over the past five years, there have been three separate periods of time where these children have been in placement. The children were first adjudicated dependent on November 23, 2011, when they were without proper parental care and control due to Mother's arrest for driving under the influence while both [Son] and [Daughter] were in the car. The children were adjudicated dependent a second time on July 18, 2013, when they were without proper parental care and control due to Mother's numerous criminal charges and her lack of stable housing. Most recently, the children were placed in the temporary legal and physical custody of the Agency on January 22, 2016, when Mother gave birth to a drug exposed baby. After consideration of the record, and specifically the foregoing facts, it is clear Mother's neglect meets the "repeated and continued" standard of Section 2511(a)(2).

Having established the first element, the Agency easily met the second – that the neglect left "the child . . . without essential parental care, control or subsistence". *See* 23 Pa.C.S.[] § 2511(a)(2). Mother's neglect has left the children without a stable home. Providing stable and adequate housing is perhaps one of the most essential requirements of caring for one's children. Further, Mother's repeated and numerous criminal charges have rendered her unable to consistently care for her children. This is most recently evidenced by her current incarceration. Mother's failure to comply with the law and consequent incarcerations, in tandem with her . . . repeated failure to refrain from drug use, indicate to this Court that Mother is not prepared to meet the level of parental care expected of a custodial parent. This Court is persuaded that Mother's neglect "has created a situation and an environment that has left [her c]hildren without the necessary care they require." *See In re A.S.*, 11 A.3d [473,] 480 [(Pa.Super. 2010)].

Finally, the frequency with which Mother has faced criminal charges, coupled with her repeated drug use and inability to provide her children with stable housing, further demonstrates that the likelihood of remedying the underlying conditions "within a reasonable period of time" is

minimal at best. Thus, the Agency has met the requirement of unlikely remediation under Section 2511(a)(2).

Opinion *Sur* Pa.R.A.P. 1925(a), 5/24/17, at 17-19 (some internal citations omitted) ("Termination 1925(a) Op.").

Furthermore, the orphans' court credited the testimony of Angela Rotz, the caseworker with Fulton County Children Services, who testified that she spoke with Children regarding potential visits or phone calls with Mother during her incarceration. Specifically, Ms. Rotz explained:

> [Son] said, no, he did not want to have [visitation or phone calls with Mother]. When I talked to [Daughter], she did not want to have visits or phone calls with her mother as well.
>
> . . .
>
> [Son], you know, stated that, you know, they were not positive visits in the past. He didn't feel like the visit[s] were positive with his mom and he just didn't want to go. I asked if they wanted to do phone calls and [Son] clearly said, no.

N.T., 3/16/17, at 17-18.

As we have stated many times, "[a] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *In re I.J.*, 972 A.2d 5, 9 (Pa.Super. 2009) (quoting *In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa.Super. 2003)). This Court has further stated:

> Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs. . . . This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory

- 11 -

and case law that contemplates only a short period of time, to wit eighteen (18) months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care. . . . [A] parent desiring to retain parental rights must exert himself to take and maintain a place of importance in his child's life.

*In re E.A.P.*, 944 A.2d 79, 83 (Pa.Super. 2008) (internal citations and quotation marks omitted).

Our review of the record supports the orphans' court's decision. Following Children's adjudication, Mother was directed to complete the following objectives before Children would be returned to her care: (1) maintain stable housing; (2) obtain and maintain financial stability; (3) obtain a psychological evaluation and follow all treatment recommendations; (4) participate in a drug and alcohol assessment and follow all treatment recommendations; (5) participate in random drug screens; (6) maintain consistent visitation with Children; and (7) participate in in-home parenting services. N.T., 3/16/17, at 35-43; Petitioner's Ex. (B.M.D. termination) H. These problems rendered her incapable of parenting Children at the time of their removal.

Although Mother made several efforts to achieve sobriety, she failed to complete a drug treatment program, having enrolled in two programs during the ten months prior to her incarceration and failing to complete either program. N.T., 3/16/17, at 37. Likewise, in the six random drug screens conducted by the Agency, Mother tested positive for illegal substances in all six drug screens. *Id.* at 36-37. Moreover, Mother was frequently

uncooperative with the Agency and refused to sign releases of information to the Agency. *Id.* at 38. In fact, the only release the Agency received from Mother was a release from her inpatient drug treatment program, which indicated that Mother had signed herself out of the program on July 4, 2016, five days after she enrolled in the program on June 29, 2016. *Id.*

Mother also failed to address the Agency's concerns regarding her lack of stable housing and lack of employment. The Agency attempted to implement in-home services through Counseling Options and Parent Education ("COPE"). *Id.* at 39-40. While these services typically occur in the home where the parent and children reside, Mother's lack of stable housing required that these services take place at the COPE building in McConnellsburg, Pennsylvania. *Id.* Moreover, after Children were placed with Foster Parents, Mother provided the Agency with another address, where Mother alleged she was living. *Id.* at 41. However, the Agency visited the address provided by Mother, only to discover that "it did not exist. The land was for sale. It was a run down, you know, home. There was a mobile home on the property." *Id.* at 40-41. Mother also reported that she was staying with a friend in Hancock, Pennsylvania, which the Agency was also unable to verify. *Id.* at 41.

In the five years prior to the termination hearing, Mother repeatedly failed to comply with the law or maintain sobriety for any appreciable amount of time, resulting in her repeated incarceration throughout the lifetimes of

both Children. Mother has been incapable of providing parental care, control or subsistence for Children's physical and mental well-being, and this incapacity persisted to the day of the termination hearing. We, therefore, find no error or abuse of discretion in the orphans' court's decision to terminate Mother's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(2).

Finally, we address Mother's challenge to the orders changing the permanency goals for Children to adoption. We have stated:

> In cases involving a court's order changing the placement goal . . . to adoption, our standard of review is abuse of discretion. To hold the trial court abused its discretion, we must determine that its judgment was manifestly unreasonable, that the court disregarded the law, or that its action was a result of partiality, prejudice, bias or ill will. While this Court is bound by the facts determined in the trial court, we are not tied to the court's inferences, deductions and conclusions; we have a responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Therefore, our scope of review is broad.

*In re S.B.*, 943 A.2d 973, 977 (Pa.Super. 2008) (internal citations and quotation marks omitted). We are mindful, however, that "[w]hen the trial court's findings are supported by competent evidence of record, we will affirm 'even if the record could also support an opposite result.'" *In re N.C.*, 909 A.2d 818, 823 (Pa.Super. 2006) (quoting *In re Adoption of R.J.S.*, 901 A.2d 502, 506 (Pa.Super. 2006)).

Furthermore, this Court has stated,

> Placement of and custody issues pertaining to dependent children are controlled by the Juvenile Act [42 Pa.C.S. §§ 6301-65], which was amended in 1998 to conform to the

federal Adoption and Safe Families Act ("ASFA"). The policy underlying these statutes is to prevent children from languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment. Consistent with this underlying policy, the 1998 amendments to the Juvenile Act, as required by the ASFA, place the focus of dependency proceedings, including change of goal proceedings, on the child. Safety, permanency, and well-being of the child must take precedence over *all* other considerations, including the rights of the parents.

*Id.* (internal citations and footnotes omitted).

Section 6351(f) of the Juvenile Act provides in relevant part:

**(f) Matters to be determined at permanency hearing.**-- At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

. . .

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's

parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

42 Pa.C.S. § 6351(f); *see also In re S.B.*, 943 A.2d at 977-78.

"The trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents." *In re S.B.*, 943 A.2d at 978.

In challenging the orphans' court's decision to change Children's permanency goal to adoption, Mother presents the same argument she raised in challenging the involuntary termination of her parental rights. In fact, Mother does no more than copy and paste her argument from her brief challenging the termination of her parental rights. *Compare* Termination Br. at 9-11 *with* Goal Change Br. at 8-9. Mother's argument is essentially that her incarceration prevented her from completing her court-ordered objectives and, thus, the orphans' court erred by changing Children's permanency goal to adoption.

The orphans' court determined that the goal change to adoption would be in Children's best interest, stating:

> Despite Mother's assertion that she will soon be released from her incarceration, no guarantee or evidence of any certainty has been provided to this Court regarding when Mother will actually be released. This Court believes, like Attorney Abigail Salawage [("GAL")] articulated before this Court at the hearing – that Mother is being overly positive with her estimate of when she will be released from prison.
>
> As this Court noted at the hearing:
>
>> Mom has not provided parental duties in the past six months and it's not just because of incarceration.
>>
>> The history shows that the agency attempted to work with [Mother] since the time of the adjudication in February of 2016 up until the time of her incarceration in November of 2016. During that time, by her testimony, she admits that her major problem was drug addiction and that she did not successfully complete a program.
>>
>> . . .
>>
>> What the Court is faced with today is a promise of a change on the part of [Mother]. I hope for her sake, that she is successful upon her parole from incarceration. I have only her words that she is to be released in April, which is doubtful to the Court, given the history of [Mother] and her incarceration in November with the sentence of 6 to 60 months within the state system.
>
> This Court further noted that it finds Mother has minimally complied with established goals "based solely on her efforts to communicate via writing with the children."

Opinion *sur* Pa.R.A.P. 1925(a), 5/9/17, at 12-13 ("Goal Change 1925(a) Op.")

(citations to record omitted).

The orphans' court's findings of fact and conclusions of law are properly supported in the record. Children were first placed with Foster Parents in July of 2013, where they lived with Foster Parents for approximately eighteen months. In January of 2016, Mother again failed to maintain sobriety, and Children were removed from Mother's care and placed with Foster Parents. At the time of the March 16, 2017 hearing, Children had been in Foster Parents' care for fifteen months. N.T., 3/16/17, at 21. The Agency established objectives for Mother, including: refrain from using illegal drugs and alcohol and maintain stable housing. Although Mother has expressed her desire to raise Children upon her release from prison, Mother has not been able to meet the essential needs of Children. Notably, Mother testified that she would be released from prison in April of 2017, but failed to present any evidence supporting her claim of an early release.

Children have adjusted well living with Foster Parents. N.T., 3/16/17, at 22-24. Children have bonded with Foster Parents and their foster siblings. Foster Mother testified that she is able to comfort Children when they are upset and has expressed that she "would always be there" for Children. *Id.* at 22, 24. Foster Mother indicated that Children experience anxiety due to their lack of permanency and that Daughter sees a counselor at Laurel Life twice a month to learn how to "take control of her future and understand how to process things, process loss." *Id.* at 23-24, 26. Foster Mother testified

that a strong bond exists between Children and Foster Mother and that Children are doing "great" in her care. *Id.* at 24, 26.

Based on the record before us, we conclude that the orphans' court did not abuse its discretion in finding that Children's welfare would best be served by changing the goal to adoption. As this determination is supported by the record, we may not disturb it on appeal. *See N.C.*, 909 A.2d at 823.

Decrees and orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2017